UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SEMIR JEHAR,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security of the<br>United States of America,<br><br>    Defendant. | Case No: C 11-2572 SBA<br><br>**ORDER RE: CROSS-MOTIONS**<br>**FOR SUMMARY JUDGMENT**<br><br>Dkt. No. 18, 19 |

Plaintiff Semir Abdul Jehar ("Plaintiff") filed the instant action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"). Plaintiff alleges that he was improperly denied Supplemental Security Income ("SSI") benefits by the Administrative Law Judge ("ALJ") reviewing his application for benefits.

The parties are presently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. 18) and Defendant's Cross-Motion for Summary Judgment (Dkt. 19). Having read and considered the papers submitted, and having reviewed the record, the Court hereby GRANTS Plaintiff's motion and DENIES Defendant's motion. The action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for a new hearing before an ALJ for further consideration consistent with this Order.

## I. BACKGROUND

### A. THE FIVE-STEP DISABILITY DETERMINATION PROCESS

Under Title II of the Social Security Act, disability insurance benefits are available when an eligible claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[1]

The ALJ engages in a five-step sequential evaluation process to determine whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a). The five step inquiry is as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant bears the burden of establishing a prima facie case of disability. Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). "Once the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show that the claimant can

---

[1] Because the Title II and Title XVI regulations relevant hereto are identical, only the Title II regulations are cited herein.

perform other types of work that exist in the national economy, given [the claimant's] residual functional capacity, age, education, and work experience." Id. (internal quotation and citation omitted).

### B.   FACTUAL AND PROCEDURAL SUMMARY

On February 16, 2007, Plaintiff, then 26 years-old, applied for SSI, alleging that he became disabled as of June 1, 2006, due to a seizure disorder.  AR 118, 125.  At the time of his application, Plaintiff lived in an apartment with his mother.  AR 159.[2]  In connection with the proceedings relating to his SSI application, Plaintiff was examined by Morgan Felix, Ph.D, who was retained by the Commissioner to examine Plaintiff and administer a variety of tests.  AR 261.  He diagnosed Plaintiff with generalized anxiety disorder, cognitive disorder, personality disorder, chronic seizure disorder and severe stress.  Though Plaintiff had earned a college degree in electrical engineering, Dr. Felix indicated that Plaintiff had a low IQ score of 83 and a Global Assessment of Functioning ("GAF") score of 50.  AR 263.  Dr. Felix noted that Plaintiff demonstrated obsessive-compulsive behavior and displayed "generalized anxiety with anger," though he questioned why his seizures "are not better controlled."  Id.  He concluded that Plaintiff "would require a great accommodation in the workplace if he does indeed suffer from unpredictable seizure activity," and that "there is no doubt that unpredictable seizures would make the claimant a poor vocational candidate."  AR 263.

Plaintiff reported to the Commissioner that he has suffered seizures since the age of thirteen, and that he more recently has been suffering from them at a rate of once per month.  AR 148.  These seizures have caused him to lose consciousness, have convulsions and bite his tongue.  Id.  Plaintiff cannot drive due to his seizures.  Id.  He also reported having difficulty sleeping, which makes him feel tired throughout the day.  AR 153.  He has a poor memory and must be reminded by his mother to take his medications.  Id.  Likewise, Plaintiff's mother, Webet Solomon-Jehar, confirmed that Plaintiff has memory

---

[2] It is not clear whether other family member resided in the apartment.

issues and a poor attention span that require her to constantly remind him to take his medicine, dress and eat.  AR 159.  As far as his demeanor, Ms. Solomon-Jehar indicated that he does not handle stress well, and is quick to become angry.  AR 165.  She used to believe that Plaintiff's behavior was due to "laziness" which used to frustrate and anger her; however, she now understands that Plaintiff's "illness" is to blame.  AR 166.

On October 30, 2009, the ALJ issued a Notice of Decision ("Decision") denying Plaintiff's application for SSI.  AR 7-16.  The ALJ acknowledged that Plaintiff has a seizure disorder, but he believed that Plaintiff did not have a "significantly limiting mental impairment" for purposes of step two of the sequential process.  AR 12.   As support, the ALJ noted that "two State Agency psychiatrists [Dr. Ida Hilliard and Dr. George P. Norbeck] opine[d] that the claimant's mental impairment has been non-severe."  Id.  He made no mention of Dr. Felix's report, even though Dr. Felix, unlike Drs. Hilliard and Norbeck, actually examined Plaintiff.  Likewise, the ALJ made no mention of Plaintiff's mother's report, aside from a passing reference that her description of Plaintiff's "functioning" was "comparable" to Plaintiff's description.  AR 14.  In addition, the ALJ found at step four that Plaintiff "had a residual functional capacity to perform full range of work," subject to certain physical limitations.  AR 13.

After receiving the ALJ's adverse ruling, Plaintiff requested review by the Appeal's Council, which denied review on March 24, 2011.  AR 1-6.

Plaintiff filed his Complaint in this Court on May 27, 2011, seeking review of the ALJ's Decision. Dkt. 1.   In accordance with the Court's procedural order, Plaintiff filed a motion for summary judgment on December 7, 2011.  In his motion, Plaintiff contends that the ALJ erred by:  (1) rejecting without explanation the opinion of Dr. Felix, an examining physician; (2) rejecting without explanation the testimony of Plaintiff's mother; and (3) failing to properly assess Plaintiff's RFC.  Defendant filed an opposition and cross-motion on January 3, 2012.  Dkt. 18, 19.  Plaintiff did not file a reply brief.

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court has authority to review a Commissioner's decision to deny disability benefits to a claimant.  The Court's role is "to ensure that the [ALJ's] decision was supported by substantial evidence and a correct application of the law."  Ludwig v. Astrue  681 F.3d 1047, 1051 (9th Cir. 2012).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  The Court must "review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

The decision whether to remand for further proceedings under sentence four of 42 U.S.C. § 405(g) or simply to award benefits is within the discretion of the district court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).  When a reviewing court "reverses an administrative agency determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).   Further proceedings are appropriate where additional proceedings could remedy defects in the Commissioner's decision.  Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

## III. DISCUSSION

### A. DR. FELIX

Step two of the sequential process requires a determination of whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). In making a determination at step two, the ALJ relies on medical evidence to consider whether the claimant's impairment more than minimally limited or restricted his or her physical or mental ability to do basic work activities. Id. If the ALJ concludes that the impairment is not severe, the claim is denied. Id. If the ALJ makes a finding of severity, the ALJ proceeds to step three. Id.

Plaintiff's application for SSI is based on his seizure disorder, which he claims prevents him from operating machinery, poses concentration problems and, in his view, generally makes him a "liability" to employers. AR 137. The ALJ noted Plaintiff's seizure disorder, but concluded that he does not have "a significantly limiting mental impairment" for purposes of step two. RT 12. The ALJ stated:

> Additionally, the claimant is not found to have had any significantly limiting mental impairment. At a minimum, the record does not document any psychiatric treatment or psychiatric hospitalizations. Treatment records do not indicate any particularly abnormal behavior. And the claimant's activities of daily living seem to have been limited by physical rather than any mental impairment.
>
> Similarly, in assessments dated July and October 2007, two State Agency psychiatrists opine that the claimant's mental impairment has been non-severe.

AR 12. The ALJ noted that his conclusion was supported by the opinions of Drs. Hilliard and Norbeck. Id. Both of these physicians opined that Plaintiff's condition did not satisfy the diagnostic criteria for a "severe" mental impairment. AR 197, 272-80, 297.

Plaintiff argues that the ALJ erred in relying on the opinions of these two non-examining physicians, while ignoring those of Dr. Felix, the Commissioner's consultative examiner. Dr. Felix performed a psychological evaluation of Plaintiff which included administering various diagnostic tests. Based on the test results, a mental status examination/interview, and clinical observations, Dr. Felix assessed Mr. Jehar with anxiety

- 6 -

disorder, cognitive disorder, personality disorder and a Global Assessment of Functioning ("GAF") score of 50. AR 261-263.[3] With respect to Plaintiff's ability to work, Dr. Felix stated that:

> *The claimant would require great accommodation in the workplace if indeed he does suffer from unpredictable seizure activity.* It is recommended that the claimant obtain further medical evaluation and perhaps a different medication regimen. It is possible that the anger seen in this evaluation was independent of seizure activity, but may in fact have been a cause of his emotional outburst and feeling sick during the examination. *In any event, there is no doubt that unpredictable seizures would make a claimant a poor vocational candidate.*

AR 263 (emphasis added). The ALJ did not provide reasons for disregarding the opinions and findings of Dr. Felix or otherwise mention them in his Decision. The Court finds that the ALJ's failure to do so was erroneous.

There are three types of physicians whose opinions may be considered in an SSI matter: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). A treating physician's opinion is entitled to the most weight. Id. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id.

Here, the ALJ offered no reason for crediting the opinions of Drs. Hilliard and Norbeck over Dr. Felix, notwithstanding the fact that Dr. Felix was an examining physician while the other physicians were not. In fact, the ALJ fails to mention Dr. Felix's report in his Decision. Defendant ignores the Ninth Circuit holding in Lester and instead argues that

---

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007). "A GAF . . . is essentially a snapshot of an individual's condition at a given time," Moon v. Astrue, No. No. 3:11-cv-05230-RJB-KLS, 2012 WL 1292424, at *3 (W.D. Wash. Mar. 14, 2012), and is relevant to a disability determination, see Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

it was proper for the ALJ to rely on Drs. Hilliard and Norbeck's opinions "because their opinions were consistent with the record." Resp't Opp'n at 3. However, Respondent fails to provide any citations in the record to support this contention. In addition, Respondent ignores that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. The Court concludes that the ALJ's failure to address the opinion of Dr. Felix constitutes reversible error. Id.

### B. PLAINTIFF'S MOTHER

Next, Plaintiff contends that the ALJ erred by failing to take into account the lay witness testimony of Plaintiff's mother without offering any explanation for doing so. See Pl.'s Mot. at 20. Ms. Solomon-Jehar submitted a third-party report regarding Plaintiff's daily activities and functional limitations. AR 159. Among other things, she reported that Plaintiff was slow to wake up, was unable to concentrate, follow instructions and had a poor memory, had to be reminded to do everything, became agitated and angry easily, and otherwise was unable to work due to his condition. Id.; see Pl.'s Mot. at 20-21. The ALJ rejected the mother's testimony without offering any explanation or discussing her testimony in any meaningful way.[4]

An ALJ must consider lay testimony concerning a claimant's ability to work. Stout, 454 F.3d at 1053. The Ninth Circuit has made it clear that lay witness testimony "is competent evidence and cannot be disregarded without comment." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (internal quotations omitted). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons that are germane to each witness" and those reasons must be "specific." Id. Specifically, an ALJ is "required to consider and comment upon competent lay testimony, as it concerned how [Plaintiff]'s impairments impact his ability to work." Id. at 1115-1116. Where the ALJ errs in failing to discuss

---

[4] The only mention of such testimony is in connection with the ALJ's comment that the Plaintiff had described certain work limitations. AR 13. In that regard, the ALJ noted that "[i]n a statement dated May 2007, his mother reported his functioning in comparable terms." AR 14.

competent lay testimony and such error is not harmless, the proper course of action is to remand the action for further administrative proceedings.  Stout, 454 F.3d at 1056.

In the instant case, the Agency does not dispute Plaintiff's contention that the ALJ committed error in failing to explain the reasons he disregarded the Plaintiff's mother's testimony.  Nonetheless, the Agency contends that such error was harmless on the theory that the mother was merely corroborating the testimony of Plaintiff—and that the ALJ provided reasons why he discounted the credibility of Plaintiff's statements.  See Resp't Opp'n at 8.  Silent disregard of competent lay witness testimony is harmless error if the Court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Stout, 454 F.3d at 1056.  Having reviewed the record, the Court cannot confidently conclude that the error was harmless.  Plaintiff's mother provided a detailed account of Plaintiff's impairments— and importantly—their direct impact on his ability to work.  The fact that her testimony may have mirrored Plaintiff's to some extent, and that the ALJ provided reasons for rejecting *Plaintiff's* testimony is of little moment.  Ninth Circuit case law clearly requires the ALJ to discuss the reasons he or she is discounting the testimony of the lay witness. Nothing in the relevant Ninth Circuit jurisprudence supports the notion that the ALJ's discussion regarding another witness is sufficient, standing alone, to discharge such duty. See Bruce, 557 F.3d at 1115-1116.  The Court therefore remands the matter to the ALJ for further and specific consideration of Plaintiff's mother's testimony.  Stout, 454 F.3d at 1056.

### C. PLAINTIFF'S RFC

The assessment of a claimant's RFC is at the heart of steps four and five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  RFC measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  An RFC assessment must be based on all of the relevant evidence in the case record, including medical history and laboratory

findings, the effects of treatment, reports of daily activities, lay evidence, medical source statements, effects of symptoms (including pain) that are reasonably attributed to a medically determinable impairment, evidence of attempts to work, the need for a structured living environment, and available work evaluations.  SSR 96-8p, 1996 WL 374184 at *5; 20 C.F.R. §§ 404.1513, 404.1529; see Robbins, 466 F.3d at 883.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96–8p, at *4.

The ALJ found that Plaintiff "has had a residual functional capacity to perform a full range of work at all exertional levels," with the exception of certain, specified activities. AR 13.  Plaintiff contends that the ALJ's RFC assessment was flawed because it failed to properly take into account Dr. Felix's opinions and the testimony of Plaintiff's mother.  See Pl.'s Mot. at 22.  Plaintiff further contends, in turn, that the ALJ's failure to consider such evidence resulted in his posing flawed hypothetical questions to the Vocational Expert.  Id. As discussed, the Court agrees that the ALJ erred in failing to provide specific reasons for rejecting or discounting the opinions of Dr. Felix and Plaintiff's mother.  In light of that error, the Court is unable to assess the full implication of these failures, including whether and/or the extent to which the ALJ's apparent failure to consider those opinions affected his assessment of Plaintiff's RFC.  On remand, the ALJ shall clarify in his RFC assessment whether or not he included the opinions of Dr. Felix and Plaintiff's mother, and if not, his reasons for discounting or excluding their opinions.

### D.     REMEDY

As relief, Plaintiff requests that the Court remand for an immediate award of benefits, or alternatively, remand the action to the Commissioner with "specific remedial instructions."  See Pl.'s Mot. at 23.  The Commissioner does not respond directly to this point other than to state that the ALJ's Decision should be affirmed.  See Def.'s Opp'n at 10.  Nonetheless, the Court finds that the deficiencies set forth above may be remedied through further administrative proceedings.  Accordingly, the Court remands this matter for further proceedings consistent with the Court's ruling.  McAllister, 888 F.2d at 603.

IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment is GRANTED;

2. Defendant's cross-motion for summary judgment is DENIED;

3. The Commissioner's decision is REVERSED and this matter is REMANDED for further administrative proceedings consistent with this Order.

4. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: September 28, 2012

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge